IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HELEN BOWERS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : C.A. No. 19-1883-LPS |
| | : |
| UNIVERSITY OF DELAWARE, | : |
| MATTHEW KINSERVIK, | : |
| and LAURA FIELD, | : |
| | : |
| Defendants. | : |

Andrew G. Ahern III, JOSEPH W. BENSON, P.A., Wilmington, DE

Mark B. Frost and Joseph P. Guzzardo, MARK B. FROST & ASSOCIATES, Philadelphia, PA

    Attorneys for Plaintiff

James D. Taylor, Jr. and Charles E. Davis, SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, DE

    Attorneys for Defendants University of Delaware, Matthew Kinservik, and Laura Field

**MEMORANDUM OPINION**

November 30, 2020
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I. INTRODUCTION

On February 28, 2020, Defendants University of Delaware (the "University"), Matthew Kinservik ("Kinservik"), and Laura Field ("Field" and, together with University and Kinservik, "Defendants") moved to dismiss the claims asserted against them in the Amended Complaint (D.I. 3) ("Compl.") filed by Plaintiff Helen Bowers ("Bowers" or "Plaintiff"), pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 6)

Plaintiff's Amended Complaint alleges three counts of retaliation and violations of her constitutional rights. (Compl. ¶¶ 43-52) Count One, brought pursuant to 42 U.S.C. § 1983, alleges violations by "all individual defendants" of Bower's rights under the First and Fourteenth Amendments to the United States Constitution. (*Id.* ¶¶ 43-45) Counts Two and Three assert violations by the University of Title VI of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, respectively. (*Id.* ¶¶ 46-52) In her brief opposing Defendants' motion, Bowers voluntarily withdrew Counts Two and Three (D.I. 9 at 2); they will be dismissed. The sole remaining claim is Count One. (D.I. 9 at 2)

The Court has considered the parties' briefing (*see* D.I. 7, 9, 10), Plaintiff's Amended Complaint (D.I. 3), and, to the extent permissible at this early stage of the proceedings, the additional materials the parties have put in the record (*see* D.I. 9 Ex. 1; D.I. 10 Ex. 1) Having done so, the Court will grant in part and deny in part Defendants' motion to dismiss.

1

## II. BACKGROUND[1]

Bowers became chair of the Department of Finance in the University's Lerner College of Business ("Lerner") in 2012. (*See* Compl. ¶ 10) In 2013, Plaintiff discovered that a professor in the department ("Professor") allegedly made "various racist anti-Chinese statements towards and about members of the [University] student body." (*Id.* ¶ 11) Bowers contends that Professor repeatedly claimed "that he was not happy with the number of Chinese students on campus, that Chinese students cheat, that all Chinese students lack ethics, [and] that the University only accepts Chinese students for the revenue." (*Id.* ¶ 13) Plaintiff asserts that other professors witnessed these comments, as Professor made them during department meetings and in department space (among other places). (*Id.* ¶ 12)

In October 2013, Bowers reported Professor's comments to Lerner's dean and deputy dean, as well as to the Provost's Office, because she believed the comments violated University policies and race discrimination laws. (*Id.* ¶ 14) Further, as part of her responsibility as department chair, Bowers issued a written evaluation of Professor for 2013, in which she described his comments as "inappropriate, disruptive, and harassing." (*Id.* ¶ 15) In response, Professor filed a union grievance against Plaintiff in April 2014, to dispute the evaluation's claims. (*Id.* ¶¶ 16-17; D.I. 7 at 4)

In July 2014, Kinservik became the University's Vice Provost for Faculty Affairs. (Compl. ¶ 18) As such, Plaintiff alleges, he assumed responsibility for overseeing the grievance

---

[1] The Court's recitation of the background facts is based on taking the Amended Complaint's well-pleaded factual allegations as true, which the Court is obligated to do in evaluating the motion to dismiss. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) ("A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.").

proceeding, as well as an arbitration that Professor later filed. (*Id.* ¶¶ 18, 20, 22; D.I. 7 at 4 & n.3)

These proceedings lasted from October 2014 to April 2016. (Compl. ¶ 21) Plaintiff asserts that other professors gave testimony during this time, corroborating her account of Professor's comments. (*Id.*) Bowers contends that, in retaliation, Professor alleged that Bowers had pressured certain department professors to testify falsely against Professor in the proceedings. (*Id.* ¶ 24) After the proceedings ended, Bowers claims that "it became clear that Defendants were going to not take further action" and that Kinservik told Plaintiff "we are not going to do anything" about Professor. (*Id.* ¶¶ 25-26)

In August 2016, Bowers began a one-year position with the Securities and Exchange Commission ("SEC") through a program that allowed her to remain a University employee and receive her regular salary during that year. (*Id.* ¶ 27) In January 2017, however, Bowers' SEC supervisor fired her "for no legitimate reason." (*Id.*) Plaintiff further alleges that Kinservik claimed she was fired from her SEC position "because of alleged behavioral and mental health issues." (*Id.* ¶ 28) On January 13, 2017, Kinservik told Bowers that she must take voluntary leave or otherwise "face consequences up to termination." (*Id.* ¶ 29) Bowers took leave a few days later. (*Id.*) She alleges that Kinservik's action was taken in retaliation for her complaints about Professor. (*Id.*)

Plaintiff cites three additional instances of alleged retaliation by Kinservik occurring after she took leave. (*Id.* ¶¶ 30-32) First, on January 24, 2017, Kinservik prohibited her from entering campus. (*Id.* ¶ 30) Second, on January 31, 2017, Kinservik forced her to undergo a psychiatric evaluation. (*Id.* ¶ 31) Third, in January or February 2017, Kinservik emailed university professors and called Plaintiff a "liar and an 'embarrassment' to the University." (*Id.* ¶ 32)

3

Alleging that she was forced to retire after such accusations, Bowers submitted her retirement papers on October 5, 2017, effective on August 31, 2019. (*Id.* ¶¶ 34-35) The University placed her on administrative leave from January to August 2018. (*Id.* ¶ 36)

Finally, Plaintiff alleges three instances in which Field, who had assumed the role of chair of Lerner's Department of Finance, retaliated against her. (*Id.* ¶¶ 37, 39-40) In the summer of 2018, Field prohibited Bowers from teaching, although such teaching is "common among professors in their pre-retirement leave year;" this prevented her from earning additional salary during that time. (*Id.* ¶ 37) Further, Plaintiff alleges that Field made disparaging comments about Plaintiff to other professors and removed her from a University-wide email list. (*Id.* ¶¶ 39-40)

After retiring on August 31, 2019, Plaintiff filed a *pro se* Complaint in this Court on October 7, 2019. (*Id.* ¶ 41; D.I. 1) Plaintiff filed an Amended Complaint on October 28, 2019 and subsequently retained counsel in December 2019. (D.I. 3, 4) Defendants have moved to dismiss the Amended Complaint on the grounds that it fails to state a claim on which relief may be granted and because the claims are barred by the applicable statute of limitations. (D.I. 6, 7)

## III. LEGAL STANDARDS

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff,

4

plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## IV. DISCUSSION

### A. University As A Defendant

Defendants assert that Count One, the sole remaining claim Plaintiff seeks to press, does not name the University as a Defendant, so the University should be dismissed. (D.I. 10 at 1-2) Unlike Counts Two and Three, which unambiguously named "University of Delaware" as Defendant, Count One only names as Defendants "all individual Defendants." (*See* Compl. ¶¶ 43-52) In addition, Plaintiff has not pled any theory of institutional liability. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). Under § 1983, there is no respondeat superior liability. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989). For an institution to be liable under § 1983, a plaintiff must demonstrate that an institutional policy or custom caused the alleged constitutional violation. *See Natale*, 318 F.3d at 583-84. Plaintiff's Amended Complaint contains no such contention about the University. (*See* D.I. 10 at 2-3)

The language of the Amended Complaint and the omission of even a hint of a theory of institutional liability strongly suggest that Plaintiff intended only to name Defendants Kinservik and Field in Count One. Given how the briefing proceeded, and recognizing that the Amended Complaint was filed by Plaintiff when she was *pro se* (although later adopted by counsel, who did not seek to amend again), the Court will provide Plaintiff one final opportunity to amend her complaint, should she believe she has a basis to try to add the University as a defendant to Count One. Otherwise, the University will be dismissed as a Defendant.

### B. Statute of Limitations

Defendants argue that Plaintiff's Complaint was not timely filed and that her § 1983 action is barred by the applicable statute of limitations. (D.I. 7 at 6-9) A statute of limitations

6

defense may be raised in a Rule 12(b)(6) motion "[when] the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (internal quotation marks omitted). For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions. *See Wilson v. Garcia*, 471 U.S. 261, 275 (1985). Thus, in Delaware, § 1983 claims are subject to a two-year limitations period. *See* 10 Del. C. § 8119; *Johnson v. Cullen*, 925 F. Supp. 244, 248 (D. Del. 1996). Section 1983 claims accrue "when the plaintiff knew or should have known of the injury upon which [her] action is based." *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

Plaintiff asserts that because the adverse employment action on which her claim is based was her constructive discharge from the University, the limitations period runs from October 5, 2017, the date she submitted her retirement papers. (D.I. 9 at 7-9 & n.4) Plaintiff also contends that October 7, 2019, the date she filed this action, falls within the two-year limitations period, because it is the first business day after Saturday, October 5, 2019. (*Id.* at 7 n.3) In their reply brief, Defendants appear to concede that the Third Circuit directs courts to apply Federal Rule of Civil Procedure 6(a) to calculate limitations periods. (*See* D.I. 10 at 10 n.12; *see also Monkelis v. Mobay Chem.*, 827 F.2d 937, 938 (3d Cir. 1987); *Hudson v. Aaron Rental Co.*, 2010 WL 2679863, at *2 (D. Del. July 6, 2010) (applying Third Circuit's practice of calculating limitations periods using Federal Rule of Civil Procedure 6(a))) It follows that Monday, October 7, 2019 falls within the two-year limitations period that began on October 5, 2017.

The Third Circuit has also explained that an alleged adverse action "need not be great in order to be actionable, but it must be more than *de minimis*." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). Common sense dictates, and other courts have suggested, that a constructive

7

discharge exceeds *de minimis* action.[2] Thus, for the purposes of the statute of limitations analysis, the Court will consider Plaintiff's constructive discharge an actionable form of retaliation in the First Amendment context.

In sum, the Court finds that Plaintiff's claims arising from actions that occurred on or after October 5, 2017 fall within the statute of limitations. In contrast, all claims for actions taking place before October 5, 2017 are time-barred. Since this conclusion cannot be altered by an amended pleading, any time-barred claims will be dismissed with prejudice.

### C. First Amendment Retaliation Claim

Where the plaintiff pressing a First Amendment retaliation claim under § 1983 is a public employee, the plaintiff must allege that "(1) the activity in question is protected by the First Amendment and (2) the protected activity was a substantial factor in the alleged retaliatory action." *Falco v. Zimmer*, 767 F. App'x 288, 298-99 (3d Cir. 2019). If the plaintiff proves both, the burden shifts to the employer to prove that "(3) the same action would have been taken even if the speech had not occurred." *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015).

#### 1. Constitutionally Protected Activity

Whether speech is protected by the First Amendment is a question of law. *See id.* A public employee's speech is protected by the First Amendment if (1) the employee spoke as a citizen, (2) the speech involved a matter of public concern, and (3) the government employer did not have "'an adequate justification for treating the employee differently from any other member

---

[2] *See, e.g., Migliore v. Feria*, 2015 WL 7273383, at *4 (E.D. Pa. Nov. 17, 2015) (stating that "the adverse action need not reach the level of a constructive discharge," which implies that constructive discharge would safely meet *de minimis* standard); *Schneck v. Saucon Valley Sch. Dist.*, 340 F. Supp. 2d 558, 578 (E.D. Pa. 2004) ("I see no reason why constructive discharge should not be an independent actionable form of retaliation in [the First Amendment] context.").

8

of the general public'" as a result of the speech. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). At present, the parties dispute solely the first of these factors: whether Plaintiff spoke as a citizen when reporting Professor's comments, including them in her annual evaluation of Professor, and testifying about them in arbitration proceedings. Accordingly, the Court will limit its analysis in this section to this issue.

The Supreme Court of the United States held in *Garcetti v. Ceballos* that a public employee does not speak as a citizen when speaking "pursuant to [her] official duties." 547 U.S. at 421. The Court later elaborated on this standard in *Lane v. Franks*, 573 U.S. 228, 240 (2014), explaining that the "critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties."

Plaintiff argues that she spoke as a citizen, and not pursuant to her official duties as chair of Lerner's Department of Finance. (D.I. 9 at 12-13) She contends that her job did not require her to report Professor's comments; rather, she exceeded her ordinary job duties by speaking about his racist remarks. (*See id.*) Defendants, in contrast, liken Plaintiff's speech to "complaints up the chain of command about issues related to an employee's workplace duties – for example, . . . misconduct by other employees," which the Third Circuit has routinely held are within an employee's official duties. (D.I. 7 at 9 (citing *Morris v. Phila. Hous. Auth.*, 487 F. App'x 37, 39 (3d Cir. 2012)); *see, e.g.*, *Hill*, 455 F.3d at 242) Defendants note that Plaintiff reported Professor's comments because they violated University policy, and that her documentation of the comments in Professor's 2013 evaluation was made pursuant to her duties as chair. (D.I. 7 at 9)

9

In support of their position, Defendants rely on *Golovan v. University of Delaware*, 73 F. Supp. 3d 442 (D. Del. 2014), in which this Court found that a professor who reported suspicions of sexual harassment by another faculty member was not speaking as a citizen. In *Golovan*, this Court noted that the plaintiff's complaint alleged that, pursuant to the University's antidiscrimination/harassment policy, he was "required to report said violations." *Id.* at 454. Similarly, in *Hill v. Borough of Kutztown*, 455 F.3d at 242, the Third Circuit's conclusion that a borough manager was not speaking as a citizen with respect to statements against the borough's mayor relied heavily on the language in the complaint. There, the complaint explicitly stated that the plaintiff reported the mayor's harassment "as part of his duties as Manager." *Id.*

By contrast, here Plaintiff's Amended Complaint contains no such allegation that she was required, as part of her job, to make the statements she claims later became the basis for Defendants' retaliation. Moreover, although Plaintiff concedes that issuing annual evaluations was her "responsibility" as chair, the Amended Complaint does not assert that this duty required her to include comments about professors' violations of University policies. (*See* Compl. ¶ 15) Thus, construing the Amended Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff has plausibly alleged that she spoke as a citizen when she went above and beyond her job duties by reporting Professor's comments and included them in his annual evaluation.[3]

---

[3] Of course, the Court cannot predict what the evidence will eventually show on this point. Defendants' contention that it *was* within the job duties of the chair of a University department to report racist statements by a professor in her department is, itself, entirely plausible; arguably, it is more plausible than the contrary inference Plaintiff is asking be drawn from the allegations in the Amended Complaint. On a Rule 12(b)(6) motion, however, it is the plaintiff's reasonable inferences that must be credited.

10

Although a closer call, the Court reaches the same conclusion with respect to Bowers' allegations about the statements she made as part of the private arbitration initiated by Professor. (*See id.* ¶¶ 17, 20-21) The Court concludes that, taking all reasonable inferences in favor of Bowers, she has plausibly alleged that she was speaking as a citizen, and not as a requirement of her job, when she made statements in the arbitration that she contends later led to Defendants' retaliation against her. The Amended Complaint alleges: "Also in October of 2014, [Professor] then filed [an] arbitration . . . based, in part, on Plaintiff's evaluation mentioning . . . aforestated disruptions and harassing behavior." (*Id.* ¶ 20) Notably, Bowers does not allege that she was required, in her role as department chair, to participate in the arbitration and defend her evaluation of Professor.

The Court is not concluding that all three instances of Plaintiff's speaking (reporting Professor's statements, including them in Professor's evaluation, and defending the evaluation in the arbitration) will necessarily rise and fall together. The evidence may well demonstrate that Bowers was speaking as a citizen when she reported Professor's racist comments and included them in the evaluation – and then, having done so, that she was speaking as an employee, within the scope of her job responsibilities, when she defended the evaluation in the arbitration. All that the Court must determine now is whether Bowers has plausibly alleged that she was speaking as a citizen in the arbitration and, on that point, the Court has sided with Bowers.[4]

---

[4] The Court does not agree with Plaintiff's reading of *Lane v. Franks*, 573 U.S. 228, which according to Plaintiff holds that all testimony in any legal proceeding is *per se* constitutionally protected. (*See* D.I. 9 at 13) *Lane* held that it was citizen speech when a public employee complied with a subpoena and gave testimony against his subordinate before a grand jury and in a criminal trial. *See* 573 U.S. at 238-41. The alleged facts are quite different here and – depending on the evidence – the outcome may also be different here. *See, e.g., Southerton v. Borough of Honesdale*, 2018 WL 5810269, at *5 (M.D. Pa. Nov. 6, 2018) (distinguishing between testimony in public courtroom, as in *Lane*, and testimony in private grievance arbitration, which is not necessarily protected speech).

11

In sum, taking the allegations in Plaintiff's Complaint as true, the Court concludes that Plaintiff has adequately and plausibly alleged that she spoke as a citizen when she reported Professor's comments, included them in his annual evaluation, and then testified in the arbitration proceedings related to his evaluation.

### 2. Causation

To demonstrate the requisite causation, Bowers must allege that her reporting of Professor's comments was a substantial factor in Defendants' retaliation – which given the Court's ruling on the statute of limitations has been narrowed to include only actions occurring on or after October 5, 2017, when Plaintiff's constructive discharge occurred. *See Hill*, 455 F.3d at 241. A plaintiff can establish that her protected activity was a substantial factor in the retaliation by showing either "an unusually suggestive temporal proximity" or "a pattern of antagonism coupled with timing." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Even in the absence of such evidence, a plaintiff can show that causation should be inferred from the "evidence gleaned from the record as a whole." *Id.*

As already explained, Bowers has adequately alleged that she engaged in protected speech when she reported Professor in 2013, issued his evaluation in early 2014, and participated in the arbitration (which she alleges did not conclude until April 2016). (*See* Compl. ¶¶ 14-15, 21, 23) The Amended Complaint alleges that on some unspecified date thereafter, it "became clear that Defendants were going to not take further action" against Professor but would "instead retaliate against Plaintiff for her complaints." (*Id.* ¶ 26) Given the lack of specificity in the Amended Complaint, the Court cannot discern the amount of time that allegedly passed between the last of Plaintiff's protected speech and Defendants' retaliatory action. *See generally Est. of*

12

*Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) (noting that Third Circuit has drawn inference of causation where temporal gap was two days, but not nineteen months).

Regardless of whether Bowers should benefit from an inference of retaliation based on temporal proximity, the Court concludes that her allegations of causation are sufficient to survive the motion to dismiss. (*See, e.g.*, D.I. 9 at 16) The Amended Complaint alleges that, in somewhat swift succession, her complaints about Professor were brushed off by Kinservik, she was forced to undergo psychological testing, and she was met with an ultimatum forcing her to accept voluntary leave or risk possible termination. (*See id.*; *see also* Compl. ¶¶ 25-26, 29, 31) Further, the Amended Complaint alleges that Kinservik made disparaging comments about Plaintiff to other professors, which suggests a possible retaliatory animus. (*See* Compl. ¶ 32)

While Defendants are correct that the Amended Complaint also alleges that Bowers took a one-year appointment with the SEC in approximately August 2016, from which she was terminated in January 2017 (*see id.* ¶ 27) – and on the evidence this intervening event may be found to defeat the causal chain Plaintiff will be required to prove – at this stage the Court must credit Plaintiff's reasonable inferences, which here are sufficient to meet the causation requirement. *See generally Falco*, 767 F. App'x at 310 (stating that generally causation "presents a question of fact for the jury").

Therefore, accepting the allegations in the Complaint as true and drawing all reasonable inferences in favor of Bowers, the Amended Complaint adequately and plausibly alleges causation, with respect to Defendant Kinservik.

### 3. Defendant Field's Involvement

Defendants argue that the Complaint should be dismissed as against Defendant Field because "Plaintiff has failed to plead that Dr. Field had any knowledge of Plaintiff's alleged

13

protected activity." (D.I. 7 at 11) Plaintiff responds that the Court should infer Field had knowledge based on the Amended Complaint's allegations that "Defendant Field prohibited Plaintiff from teaching at the University of Delaware during her pre-retirement leave or post-retirement, which is common among professors" and that "[t]his decision was for no legitimate reason and was instead done to retaliate against Plaintiff." (Compl. ¶ 37; *see also* D.I. 9 at 17)

The Court agrees with Defendants that Bowers has failed to sufficiently plead causation with respect to Field. (*See* D.I. 7 at 11-12; *see also Hill*, 455 F.3d at 241) To adequately allege causation as part of a First Amendment retaliation claim, Bowers must at minimum allege that Field was "aware of the protected conduct." *Falco*, 767 F. App'x at 310. The Amended Complaint fails to do so. It contains no allegations that Field knew of Bowers' protected speech or that her speech motivated Field's actions. The Amended Complaint alleges that Kinservik oversaw the proceedings between Plaintiff and Professor; thus, it adequately alleges that he was necessarily aware of the protected speech. (*See* Compl. ¶¶ 18, 22) But no similar facts are alleged with respect to Field. The allegation that Field's actions were retaliatory is conclusory and will not be credited. *See Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

For these reasons, the Court will dismiss the Complaint without prejudice as against Defendant Field. Plaintiff will have one more opportunity to amend her complaint to address the deficiencies identified.

## V.    CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss will be granted with prejudice as to any claims that accrued before October 5, 2017, and without prejudice as to any remaining claims against Defendant Field and the University. Defendants' motion to dismiss the claims against Defendant Kinservik that accrued on or after October 5, 2017 will be denied.

14

Plaintiff will have one more opportunity to amend her Complaint to address the deficiencies identified in this Memorandum Opinion.

An appropriate Order follows.